USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/13/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
  MICHAEL SAMBORSKY,                               :

                                           Plaintiff,     :

                         -against-                          :              1:20-cv-298-GHW

SARA ROTHSTEIN, doing business as 32BJ   :         MEMORANDUM OPINION
Benefit Funds, ALBERTA GALDRI, doing     :               AND ORDER
business as 32BJ Benefit Funds, and REGINE  :
BRETON, doing business as                      :
32BJ Benefit Funds,                                :

                                           Defendants.   :
-------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

      Michael Samborsky was laid off in 2014. He started collecting long-term disability benefits from the Building Service 32BJ Health Fund (the "Fund") in late 2015. But the Fund discovered in 2019 that Samborsky's employment records when he applied for benefits were incomplete: Samborsky had worked for a new employer for five months in 2015. To be eligible for disability benefits, you need to be completely disabled—which means you can't work at all for at least six months before you receive benefits. So the Fund cut off Samborsky's benefits. Samborsky protested but to no avail. He sued three Fund employees, seeking reinstatement of his long-term disability benefits. Samborsky was not entitled to benefits when he applied, so the Fund's decision to stop paying disability benefits was reasonable. Defendants' motion for summary judgment is therefore GRANTED.

**I. BACKGROUND**

    **A. Facts**[1]

        **1. The Fund**

The Fund is a jointly administered benefit fund under the Taft-Hartley Act, 29 U.S.C. § 186. Affirmation of Peggy Napier ("Napier Aff."), Dkt No. 16-1, ¶ 11. It is governed by a Declaration of Trust and Plan (the "Trust Agreement") and administered by a board of trustees. *Id.* The Trust Agreement states:

> The Trustees shall have all the general and incidental powers necessary or appropriate to proper administration of the Plan, and the Trust Fund . . . Included within such Trustee powers, but not by way of limitation, shall be the power: . . . [t]o decide, in the Trustees' sole discretion, all questions (both factual and legal) relating to eligibility or rights of Participants or Beneficiaries for Benefits under the plan, and the amount and kind of all benefits to be paid under the plan[.]

*Id.* (quoting Administrative Record ("A.R."), Ex. D to Napier Aff., Dkt Nos. 16-5–16-10, at 16-17).

A Summary Plan Description ("SPD") sets out the benefits provided by the Fund. *Id.* ¶ 12. Under the heading "Important Notice," the SPD states:

> This booklet is both the Plan document and the Summary Plan Description ("SPD") of the Plan benefits ("the Plan") of the Building Service 32BJ Health Fund's ("the Fund") Metropolitan and Suburban Plan of benefits for purposes of the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended. The terms contained herein constitute the terms of the Plan. Your rights to benefits can only be determined by this SPD, as interpreted by the official action of the Board of Trustees ("the Board"). You should refer to this booklet when you need information about your Plan benefits. In addition, the Board reserves the right, in its sole and absolute discretion, to amend the Plan at any time. In the event of conflict or ambiguity between the SPD, and your collective bargaining agreement, this SPD will control. Also, in the event there is any conflict between the terms and conditions for the Plan benefits as set forth in the SPD and any oral advice you receive from a Building Service 32BJ Benefit Fund employee or union representative, the terms and conditions set forth in this booklet control.

*Id.* (quoting A.R. at 69). Later, the SPD explains:

> The Plan is administered by the Board of Trustees. The Board governs the Plan in accordance with an Agreement and Declaration of Trust. The Board and/or its duly

---

[1] Unless otherwise noted, these facts are undisputed. The Court views the facts in the light most favorable to Samborsky because he is the non-moving party. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).

authorized designee(s), has the exclusive right, power and authority, in its sole and absolute discretion, to administer, apply and interpret the Plan established under the Trust Agreement, and to decide all matters arising in connection with the operation or administration of the Plan established under the Trust. Without limiting the generality of the foregoing, the Board, and/or its duly authorized designee(s), including the Appeals Committee with regard to benefit claim appeals, shall have the sole and absolute discretional authority to:

- take all actions and make all decisions with respect to the eligibility for, and the amount of, benefits payable under the Plan,
- formulate, interpret and apply rules, regulations and policies necessary to administer the Plan in accordance with the terms of the Plan,
- decide questions, including legal or factual questions, relating to the calculation and payment of benefits under the Plan,
- resolve and/or clarify any ambiguities, inconsistencies and omissions arising under the Plan, as described in this SPD, the Trust Agreement or other Plan documents,
- process and approve or deny benefit claims and rule on any benefit exclusions, and
- determine the standard of proof required in any case.

*Id.* ¶ 14 (quoting A.R. at 184-85).

The SPD provides for long-term disability ("LTD") benefits. The SPD states: "This Plan may provide continuing monthly income to you if you become totally disabled while you are in covered employment. This means you are unable to work in any capacity as a result of bodily injury or disease." *Id.* ¶ 15 (quoting A.R. at 137). But LTD benefits can be terminated. The SPD advises that "LTD benefits will stop on the first day of the month after . . . you work at any job[.]" *Id.* ¶ 16 (quoting A.R. at 139). The SPD includes the right to an appeal an adverse decision about LTD benefits. *Id.* ¶ 18 (citing A.R. at 155, 156, 163-64).

Fund beneficiaries are required to provide current information about whether they are entitled to benefits under the SPD. The SPD states:

> The information you give the Fund, including statements concerning your age and marital status, affects the determination of your benefits. If any of the information you provide is false, or if you perform an act or practice constituting fraud, or make an intentional misrepresentation of material fact, you may be required to indemnify and repay the Fund for any losses or damages caused by your false statements, fraud or misrepresentation. In addition, if a claim has been submitted for payment or paid by the Fund as a result of false statements, fraud or misrepresentation, the Fund may

3

>seek reimbursement, may elect to pursue the matter by pressing criminal charges and may take any other action deemed reasonable. Knowingly claiming benefits for someone who is not eligible is considered fraud and could subject you to criminal prosecution. The Board reserves the right to cancel or rescind Fund coverage for any participant . . . who willfully and knowingly engages in an activity intended to defraud the Fund[.]

*Id.* ¶ 19 (quoting A.R. at 168-69).

### 2. Samborsky's LTD Benefits

Samborsky worked as a porter in New York City. *Id.* ¶ 21 (citing A.R. at 242-56). He was terminated in August 2014. *Id.* Samborsky belonged to a union, which contested his termination in arbitration with his former employer. *Id.* The arbitrator concluded that Samborsky was discharged for just cause in August 2015. *Id.* One week after the arbitrator's decision, Samborsky applied for LTD benefits from the Fund. *Id.* ¶ 22 (citing A.R. at 235-36).

About a month later, the Fund approved Samborsky for LTD benefits. *Id.* ¶ 23 (citing A.R. at 257-59). Beneficiaries are entitled to benefits 180 days after the onset of a disability. *Id.* Samborsky became disabled in August or September 2014 but did not apply for benefits until September 2015, after he lost in arbitration. *Id.* The Fund recognized that Samborsky had been disabled for some time by the time he applied. *Id.* So the Fund approved Samborsky for benefits retroactive to March 2015, about 180 days after he became disabled. *Id.* The Fund's letter also said that "LTD benefits will end on the first day of any month after . . . you return to work in any job[.]" *Id.* The Fund began to pay monthly LTD benefits to Samborsky. *Id.* ¶ 25 (citing A.R. at 262).

Years later, the Fund learned that Samborsky had worked in a different job from March 2015 to August or September 2015. *Id.* ¶ 25 (citing A.R. at 262). It therefore stopped paying his LTD benefits in April 2019. It advised Samborsky in a letter explaining the denial of his benefits that his "Social Security Administration Earnings Report indicate[d] that" he earned $11,245 after he began to receive LTD disability benefits. *Id.* ¶ 27 (quoting A.R. at 260-61). "If you returned to work

in any job in 2015," the denial-of-benefits letter said, "you were ineligible to receive LTD benefits." *Id.*

Samborsky appealed. In a letter to the Fund about a week after the Fund cut off his LTD benefits, Samborsky acknowledged that he worked for a company called Harvard Maintenance from April to September 2015. *Id.* ¶ 28 (quoting A.R. at 262). Samborsky explained that he worked this job to "support [him]self" because he had "no other income." *Id.* He also noted that he "did not receive any LTD benefits" while he worked at Harvard Maintenance. *Id.* Samborsky received his first LTD benefits check in November 2015—two months after he stopped working for Harvard Maintenance. *Id.* So, in Samborsky's view, "[t]here [was] no over[]payment" because he did not receive LTD benefits while he was employed. *Id.*

The Fund acknowledged receipt of the appeal two days later by letter. In that letter, the Fund explained that the Fund's "records reflect[ed] that [Samborsky was] determined by the Social Security Administration to have become totally and permanently disabled on August 1, 2014, while working in covered employment." *Id.* ¶ 29 (quoting A.R. at 280-81). Based on that "determination, the Health Fund approved [Samborsky's] application for LTD benefits[,] effective March 1, 2015." *Id.* But "LTD benefits are payable" on "the first of the month following the [seventh] month of disability." *Id.* When Samborsky applied for LTD benefits in September 2015, the Fund did not have any record of him working after August 2014. *Id.* So it approved his application. "During a routine financial recertification audit" in 2019, however, the Fund found that Samborsky had been hired in March 2015 by Harvard Maintenance. *Id.* The Plan's rules state that "if [a participant] return[s] to work at any job, [his] LTD benefit will stop on the first of the month after" he returns to work. *Id.* Thus, Samborsky's "LTD benefit[s] should have stopped on April 1, 2015." *Id.* The Fund also told Samborsky that his appeal would be considered at the next regularly scheduled

5

Appeals Committee meeting in June 2019. *Id.* Samborsky appeared at that meeting and argued that he was entitled to benefits. *Id.* ¶ 30.

Less than a week later, the Fund denied Samborsky's appeal by letter. *Id.* ¶ 31. The letter explained that the Fund "approved [his] application for [LTD] benefits effective March 1, 2015." *Id.* (quoting A.R. at 286-87). Thus, "[o]n November 1, 2015" the Fund issued Samborsky two payments. *Id.* The first was for $2,000, which was eight months' worth of $250 LTD benefits per month from March through October 2015. The second was for $250, which was Samborsky's November 2015 LTD payment. *Id.* But because Samborsky worked in March 2015, the Fund told him that he was not entitled to LTD benefits after March 2015. *Id.* Ultimately, the Trustees chose not to seek recoupment of the overpayment of benefits to Samborsky. *Id.* ¶ 32 (quoting A.R. at 292).

### B. Procedural History

Samborsky filed three complaints, naming each of the Defendants in this lawsuit, in New York City Civil Court, Small Claims Part in January 2020. *See* Dkt No. 1. All three Defendants were sued "doing business as 32BJ Benefit Funds." *Id.* About two weeks later, Defendants removed the complaints to this Court. *See id.* Samborsky seeks reinstatement of his LTD benefits and back benefits that he says were owed to him but were not paid out from mid-2019 to when he filed his case. Defendants moved for summary judgment. Dkt Nos. 16-19. Samborsky opposed the motion, Dkt No. 21, and Defendants replied, Dkt No. 23.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c)). The movant must "identify[] each claim or defense—or the part of each claim or defense—on which" it seeks summary judgment. Fed. R. Civ. P. 56(a). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The movant bears the initial burden of showing "the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). If the movant carries that burden, the burden shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Id.* (citing *Celotex*, 477 U.S. at 323). To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)) (emphasis omitted). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. And the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. At summary judgment, the non-movant "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quotation omitted).

On a motion for summary judgment, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236 (quotation omitted). The court cannot "weigh the evidence or resolve issues

7

of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

Because he is proceeding *pro se*, the Court must liberally construe Samborsky's submissions and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed[.]") (citation omitted). But "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation omitted).

### B. Arbitrary and Capricious Standard

"[A] denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a plan provides the administrator with discretionary authority, the Court reviews a benefits decision for abuse of discretion. *Id.* at 111; *see also Pepe v. Newspaper & Mail Deliverers'-Publishers' Pension Fund*, 559 F.3d 140, 146 (2d Cir. 2009) ("Since the terms of the Plan grant the [administrator] discretionary authority to interpret the Plan, the standard governing the district court's review . . . is the arbitrary-and-capricious standard."); *Mack v. Verizon Commc'ns Inc.*, No. 1:16-cv-7138 (GHW), 2017 WL 6375786, at *5 (S.D.N.Y. Dec. 12, 2017), *aff'd*, 749 F. App'x 64 (2d Cir. 2019) ("The term 'arbitrary and capricious' is used interchangeably with the phrase 'abuse of discretion,' and either describes the deferential standard applied when an ERISA plan reserves discretion for the administrator." (quoting *Kruk v. Metro. Life Ins. Co.*, No. 3:07-cv-1533 (CSH), 2009 WL 1481543, at *2 n.1 (D. Conn.

May 26, 2009)). "The grant of discretionary authority thus narrows the range of judicial oversight and shields a plan administrator's decision from a more searching and broader *de novo* review." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 487 (2d Cir. 2006). The Court is "not free to substitute [its] own judgment for that of the [plan administrator] as if [it] were considering the issue of eligibility anew." *Hobson v. Metro Life Ins. Co.*, 574 F.3d 75, 83-84 (2d Cir. 2009) (quotation omitted).

A decision to deny benefits is arbitrary and capricious if is it "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999) (quoting *Pagan v. Nynex Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). A reviewing court "may not upset a reasonable interpretation by the administrator." *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995). If the parties offer "competing yet reasonable interpretations" of a policy, the reviewing court "must accept [the interpretation] offered by the administrators." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 443 (2d Cir. 1995). "[W]here the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *McCauley v. First Unum Life Ins. Co.,* 551 F.3d 126, 133 (2d Cir. 2008) (quoting *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 93 (2d Cir. 2000)).

"[A] district court's review under the arbitrary and capricious standard is limited to the administrative record." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995); *see also DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 66-67 (2d Cir. 1997). "Courts have discretion, however, to admit evidence outside the record if the plaintiff shows 'good cause' to do so." *Elizabeth Boey Chau, M.D. v. Hartford Life Ins. Co.*, No. 1:14-cv-8484 (GHW), 2016 WL 7238956, at *2 (S.D.N.Y. Dec. 13, 2016) (citing *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008)). "A demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' that may, under certain circumstances, warrant the introduction of additional evidence."

*Id.* (quotation omitted); *see also DeFelice,* 112 F.3d at 67. The Supreme Court has held that a "conflict of interest exists for ERISA purposes when a plan administrator acts in the dual role of evaluating and paying benefits claims[.]" *Chau*, 2016 WL 7238956, at *3 (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112-15 (2008)). But "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010).

## III. DISCUSSION

### A. Substitution

Mr. Samborsky has named the wrong Defendants in this lawsuit, but the Court will still consider Samborsky's claim on the merits. "Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)) (alterations in original). "ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a person to whom benefits are owed under an ERISA plan may bring a civil action to recover them." *Romero v. Teamsters Union Local 272*, No. 1:15-cv-7583 (GHW), 2019 WL 4688642, at *7 (S.D.N.Y. Sept. 25, 2019) (quoting *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009)). But "[i]n a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 509 (2d Cir. 2002) (quoting *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989)). "Under ERISA, the plan 'administrator' is 'the person specifically so designated by the terms of the instrument under which the plan is operated[.]'" *Romero*, 2019 WL 4688642, at *7 (quoting 29 U.S.C. § 1002(16)(A)(i)). "Any money judgment against an employee benefit plan shall be enforceable only against the plan as an entity." *Id.* (quoting 29 U.S.C. § 1132(d)(2)) (ellipses omitted).

None of the Defendants are administrators or trustees of the Fund. Napier Aff. ¶¶ 3-9. They are thus not proper Defendants. Samborsky should have sued the Fund itself.

The Court substitutes the Fund as a defendant. Under Federal Rule of Civil Procedure 21, "the court may at any time, on just terms, add or drop a party . . . [o]n motion or on its own." Fed. R. Civ. P. 21. Samborsky is proceeding *pro se* and thus may have been unaware that he needed to name the Fund as a defendant. And the Fund would not suffer undue prejudice from substitution. Given all that, the Court exercises its authority to add the Fund as a defendant and to drop the three improperly named Defendants.

**B. Merits**

The Fund is entitled to summary judgment on Samborsky's claim because the Fund reasonably determined that Samborsky was not entitled to LTD benefits. The Plan vests its administrator with discretion. *See* Napier Aff. ¶ 11 (quoting A.R. at 16-17). The Court must therefore defer to the administrator's decision so long as it was not arbitrary or capricious.

The decision to stop paying Samborsky LTD benefits was not arbitrary or capricious. The Plan states that participants are eligible for LTD benefits if they are "totally disabled." Napier Aff. ¶ 15 (quoting A.R. at 137). A person is "totally disabled" if he is "unable to work in any capacity[.]" *Id.* The Fund's rules provide that LTD benefits should be paid out "on the first of the month following the [seventh] month of disability." *Id.* (quoting A.R. at 280-81). Samborsky applied for LTD benefits in September 2015. *Id.* ¶ 22 (citing A.R. 235-36). When he applied for benefits, he worked for a different company and so was not "totally disabled." Thus, Samborsky was not entitled to LTD benefits when he applied. It was not arbitrary and capricious for the Fund to cut off Samborsky's LTD benefits here.

The Plan also provides that "LTD benefits will stop on the first day of the month after . . . [a participant] work[s] at any job." *Id.* ¶ 16 (quoting A.R. at 139). Samborsky returned to work after he

became eligible to receive benefits. Although Samborsky did not receive an LTD benefits check until November 2015, the Fund approved his application for LTD benefits retroactive to March 2015 because that was seven months after he was terminated in August 2014. Samborsky started working for Harvard Maintenance in March 2015, so the Fund determined that his LTD benefits should have terminated in April 2015. This interpretation of the Plan was not arbitrary and capricious.

Granted, this interpretation does not follow inexorably from the text of the Plan. As noted, the Plan says that "LTD benefits will stop on the first day of the month after . . . [a participant] work[s] at any job." *Id.* (quoting A.R. at 139). Samborsky appears to argue that this limitation does not apply because he had not yet received an LTD benefits check while he worked for Harvard Maintenance. Indeed, Samborsky stopped working for Harvard Maintenance in September 2015 and received his first check in November 2015. In essence, Samborsky argues that the rule about when LTD benefits *stop* does not apply because his LTD benefits hadn't *started* yet. The text of the Plan does not foreclose that interpretation.

But Samborksy's arguments are still inadequate for two reasons. First, the Court must defer to the Fund's interpretation unless it is arbitrary and capricious. Because the Plan's interpretation was reasonable, the Court cannot set it aside, even if Samborsky's is equally reasonable. And second, Samborsky's arguments fail for an independent reason: He wasn't entitled to benefits in the first place. By the Plan's terms, he was entitled to LTD benefits only if he stopped working because he was totally disabled. He was not entitled to benefits when he applied because, according to the Plan, he was not totally disabled—after all, he could still work and was still working when he applied in September 2015. That Samborsky did not receive an LTD benefits check until November 2015 does not affect this analysis.

Samborsky offers two other arguments in his opposition that warrant brief discussion. Dkt No. 21. Samborsky first alludes to a "booklet[]," which he claims is like the "Bible" for LTD benefits. *Id.* ¶¶ 9, 11. It is not clear whether Samborsky is referring to the SPD, but it doesn't matter. If so, his interpretation of the SPD is incorrect for the reasons recounted above. If not— and Samborsky is referring to some other booklet—then this mysterious booklet is irrelevant. The SPD governs Samborsky's eligibility for LTD benefits. And as described, Samborsky was not entitled to LTD benefits under the Fund's reasonable interpretation of the SPD.

Samborsky also argues that because the Fund did not require him to pay back his allegedly ill-gotten benefits, this shows that he "won" his appeal within the Fund. *Id.* ¶ 19. That is incorrect. The administrative record shows that the Fund told Samborsky that his appeal had not succeeded. The failure of the Fund to seek recoupment may have reflected that the Fund believed that it would be unable to collect a judgment for the inadvertently paid benefits from Samborsky. That is what the Fund argues. Napier Aff. ¶ 32. The Fund does not cite the administrative record to support that argument, so the Court does not necessarily accept that this was the true explanation for the Fund's failure to seek recoupment. But the Fund's motive doesn't matter. The Court discusses it to show that just because the Fund did not seek recoupment does not mean that Samborsky "won" his appeal or that he is entitled to LTD benefits even though he returned to work after he was purportedly "disabled." The Fund was generous and did not seek its prior overpayment. It did not agree to pay LTD benefits to Samborsky in the future.

## IV. CONCLUSION

Defendants' motion for summary judgment is GRANTED because the Fund's determination of Samborsky's eligibility for LTD benefits was not arbitrary and capricious.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to mail a copy of this order to Mr. Samborsky by first-class and certified mail, to terminate all pending motions, to enter judgment for Defendants, and to close this case.

SO ORDERED.

Dated: July 12, 2020

_____
GREGORY H. WOODS
United States District Judge